Good morning. May it please the Court. Dan Polson, Assistant Federal Defender. I'm representing Eric Nebreja. This is an appeal from a supervised release revocation. There's a couple of issues in play, but the primary disputes are whether the government submitted sufficient evidence for the district court to find that Mr. Nebreja committed the offenses of robbery in the first degree, assault in the first degree, and assault in the second degree. This case arose from Well, the judge saw the video. Yes. And are you disputing that based upon the review of that video, he could not see that, according to the video, that Mr. Nebreja was stomping on someone's head? Well, we would actually take dispute with the district court's characterization of how the injuries were inflicted. Our primary focus, and I think the elements of the offenses that we're attacking, include the serious physical injury, use of a dangerous instrument, and indifference, extreme indifference to human life. All of which essentially turn in the same question as to the seriousness of the injury. Is that right? Yeah. I mean, we're highlighting that because that's, I mean, the serious physical injury component, I think, is the weakest part of the government's case. Like I say, causation is another problem, and I'll touch on that briefly. But serious physical injury under Alaska law is a very demanding standard. And, you know, there are many Alaska cases where single strikes to the head that have resulted in serious physical injury have been over – I'm sorry – that have resulted in serious physical injury have nonetheless been overturned because the courts found that the person's hands and feet were not a dangerous instrument. And that was the government's theory in this case. This is an unarmed incident. So there's – Let's just back up for a minute. You agree and agree to the district court, or I don't know if you agree now, but agree to the district court that it was at least a third degree battery? Our position is that this case was overcharged and that the government's evidence is – All right. But if it was at least a third degree battery, the guidelines would be the same and the sentence would be valid and so on. Yeah. I think the government is arguing that this court can just simply affirm, even if the court finds that the district court committed legal error. Well, that's what I'm asking you. I mean, there's something kind of, you know, I understand the argument is, well, maybe if it was one crime or two crimes instead of eight crimes, the sentence would have been different. I mean, is that basically what you're saying? Yeah. Again, I think that this court is obligated to reverse and remand if the district court made an error of law or if the findings were clearly erroneous. But usually that's if it affects the guideline. Like, if the guideline is different but they could have done the same sentence anyway, we say, no, no, go back and look at it again under the correct guideline. But I think you're admitting this is the correct guideline? Well, the question is, when the court's doing the 3553A balancing, while the court and the government's highlighting the fact that in a revocation proceeding the seriousness of the offense is sort of, you know, minimized, nonetheless it is part of the court's analysis. They're looking at the nature and circumstances of the offense and the seriousness of the offense. No, but the nature and circumstances of the offense didn't change. See, that's what's unusual about this. Well, I would just say. It's not a factual. I mean, I know you also have a factual dispute, but leaving that out, this set of disputes is simply is it this Alaska crime or that Alaska crime, but it's not what happened. So I think there's a huge difference between saying that somebody committed assault in the first degree and nearly killed someone versus assault in the third degree by virtue of having, you know, prior conviction. Well, there is for lots of purposes, but usually it makes a difference as to the available sentence. But in this instance, it doesn't. I think it absolutely does. I think it does. And I think that That asks for the available sentence. Well, I think that if the court is finding that an individual committed assault in the first degree, I think the seriousness of that conduct, I think, has an anchoring effect for the court's assessment of what the ultimate sentence should be. No, I understand that. But it doesn't change the available sentence. It will That's from sentence, if you want to call it that. I think it would be improper for this Court to speculate that the ultimate sentence would be the same regardless. And, again, I think this Court is Right. But that's a different question. It's what the district court would have done, not what she could have done. She could have done it, the same thing. She has the option of keeping the sentence the same. But not even just that. It's not even just that she could have done the same, but, in fact, the exact guideline range to guide her would be the same, right? Right. And, again, it's just not. I mean, in the court's deciding the ultimate sentence, the guidelines are, you know, the starting point. That's the baseline. But, ultimately, the court is relying on the 35-53 rule. But unlike most guidelines, as I understand it, she couldn't go above it. Correct. I think the cap was 24 months. The cap was 24 months in any instance. Correct. Yeah. And it's not like the usual, you know, first conviction guideline where you can go up and go down, whatever, up to the maximum, up to the statutory maximum. Right, right, yeah. But, again, I think that the seriousness of the offense, while it's not, like, the most critical, most important aspect of the 35-53 balancing, it still has a role to play. And so, you know, there's a possibility that the court could find that this wasn't a assault in the first degree, and, ultimately, Mr. Nabre gets a lower sentence. And I think you can do that. But the injury was whatever the injury was. Well, here's the thing. What you call it is something else, but it was whatever. Well, and I would say that the record is very scant as to what the actual injuries were.  I mean, it was, I would say, badly tried. And I'm, yeah, and it's unusual in revocation proceeding, contested revocation proceeding, where the government doesn't offer up, like, any photographs. There's no medical records. There's no medical testimony. There's no, you know, witness testimony. It's based in this case entirely on some very fleeting cursory descriptions from the case officers. But it's not just that, because it's the video. I mean, we've now watched the video. I understand. I don't really understand how what happened. So, okay, you've admitted that the guideline range is correct, even on your best case, right? The guideline range is correct. And then the judge has to choose within that guideline range by watching the video. And I don't really understand how this, this is sort of another way to say Judge Berzon's question, but whatever you, whatever legal label you put on it, the judge is basically watching the video and deciding where in this range should this person be. And I think this video is pretty serious. Well, here's the difference. And that is that I think the record reflects that the district court got an error. And I know that your honors have the actual video. You can review it and watch it as many times as you want. And trust me, I've watched the video many, many times. And it's very chaotic. There's a lot of moving parts. There's a lot of moving players. Well, that may be, but your client is definitely in there, definitely beating people up. Well, I would say that the government's characterization of what happened is, I don't want to say that they misled the court, but I think there was a lot of confusion about what the conduct was. Because if you had to go off of the government's argument at the revocation hearing, you would have ---- But they had the video. They had the video. They had the video. Exactly. But there's a lot of confusion about the conduct that was directed at the two victims. Because understand, the two victims, I think the video shows, I think on close examination, that the victims were injured by single punches to the face. If you had to go off of the government's description, you would think that they were on the ground and being kicked repeatedly in the head. And that is just not the case. It's some third person who was kicked in the head. Somebody was being kicked repeatedly in the head. There's another individual on the ground. Right. And I would also say that as much as compelling as the video may be, the critical moments, and I would highlight the strike to Mr. Summers takes place, I think, at 145, 35. But it doesn't seem to be contested. You're not saying that the evidence is insufficient, that she had a broken nose, which had to be repaired by surgery, and that he had a concussion and which had some effects over some period.  Yeah. Some mental effects over some period of time.  It's pretty vague. Vague, but it's not contested. Well, we're disputing whether or not that arises to the level of serious physical injury. Because, again, like I just. I understand, but I just want to know what it is that we're disputing about. And that much is established. We would, yeah. But I would dispute, again, I don't think there's any dispute that the two victims were punched in the face. But I think there is a huge difference between that conduct and what the government I think was trying to emphasize. I'm trying to now focus on the injuries.  Yeah. And then the injuries, again, are described in very cursory detail. And we would analogize this to. It's cursory, but it's specific to the degree that I described it. Is that right? It doesn't say how long she was. It doesn't say whether after she had the surgery she was still disfigured. It doesn't say that. And it doesn't say whether she was even, you know, what she looked like before she had the surgery. And it doesn't say. The guy used colorful language about his problem is bell ringing, which I had to look up to find out what he was talking about. But apparently it means getting hit in the head. Right. And having problems with that. So he had some, you know, cognitive or mental problems afterwards for how long we don't know. I mean, that's basically what I get out of it. The only statement that I found in the record was several months after the assault he was still experiencing the result of the concussion and the head trauma that he received. He had some outward scuffs and scrapes. He had his bell rung severely. But there's no description about what those symptoms were. Like, are we talking about, like, periodic headaches? Are we talking about dizziness? Is he having trouble sleeping? Like, there's a whole host of symptoms. I agree with that. It's extremely vague. So what you're saying is what the district court should have done. What was it that you think the district court should have done here? I guess that's what I need to understand. So this is a sufficiency of the evidence appeal. And, again, I think the defense counsel argued that there is no question that there was criminal conduct. The question is, like, what's the proper characterization of that conduct? And we just think that characterizing this as assault in the first degree or assault in the second degree, which are reserved for offenses involving typically, you know, weapons, conventional weapons like knives or guns or bats or something like that, it's just like it's stretched. It's an overcharged case. That's our position. And I have approximately 4 minutes and 30 seconds or so. So I'm going to stand down and give the government an opportunity to present their case. But this is an interesting set of facts. I agree. May it please the Court. Seth Brickey on behalf of the United States, the FLE. Bureaus, we asked this Court to affirm the district court's sentence and revocation of Mr. DeBrayha's supervised release. It was supported by sufficiency of the evidence. The district court only needed to find, of course, one violation. And the evidence was really poorly put together, at a minimum. There was no evidence.      There was no medical evidence. As he says, there were no photos. There was no description, even by this officer who we have no idea how he knows anything anyway, of what time period he was talking about. I mean, it has to be, what's the term in the statute? Persistent or prolonged? Prolonged. Whatever that means. We have no idea how long this persisted. We don't know whether the woman was actually visibly disfigured in any way when she had the surgery. We don't know hardly anything. Your Honor, I agree that there is scant evidence in the record about these conditions and their ultimate effects, certainly less than you would expect if this were charged in a criminal case context under a beyond reasonable doubt standard. But in this case, to reflect on what the record actually shows, we have first the female victim who the agent testified had a severely broken nose that required reconstruction. Even how does he know? What does he know about this? We don't even know that. I mean, he's just some guy. He's not a doctor? No, Your Honor. He says he knew her and he spoke to her. He's relaying what she reported to him. But she has to have what? Prolonged disfigurement, basically? Prolonged disfigurement, impairment of health, or impairment of a member of the body. But prolonged? Yes, Your Honor. Prolonged. And Alaska? For all we know, she had the surgery the next day and looked beautiful two weeks later. Your Honor, I don't know if that's a realistic inference from the record. I think the Court, one, could look at the video, see the force at which she was struck, and then hear the evidence about what the consequences of that was, some surgery. I don't think it's too far of an inference that reconstructive or plastic surgery of a broken nose would take an extended period of time to heal. Does Alaska view it that way anyway, or is it what would the injury have been if you didn't fix it with surgery? I'm wondering about that, too. The case law, I think, is a little scant on this point as well, because we do have case law talking about broken bones requiring six weeks to heal. I look at the Olson case as well as the Walker case, which Olson cites, six weeks of impairment was protracted. So that's really kind of the only benchmark that I see in the case law about broken bones being distinct from, say, a laceration that you just go to the hospital, the ER, get sutured up, and you would expect to heal quickly from. But I do think that a broken bone, a severely broken bone here, six weeks, or, excuse me, significant surgery does represent... And what about the concussion? People often wake up from a concussion and they're fine the next day. And that certainly wasn't the case here, because unlike the broken nose, we do have a time frame for the concussion's lingering effects. What is it? The case officer said that he spoke to the defendant, followed up with, or, excuse me, spoke with the victim, followed up months after the incident. Where's that? ER 38, Your Honor. The male victim sustained a concussion and was still presenting symptoms months after the assault, according to the case officer's testimony. And I think the court... Months later? Where's the months later part? I followed up, or I'm reading off of Excerpt of Record 38. I followed up with both her and the male victim for some time after the assault. The male victim, months, several months after the assault, was still experiencing the result of the concussion and the head trauma that he received. So there the district court had a timeline through which the district court could establish that prolonged impairment of health as required under the statute. So it seems that the district court thought that the head stomping happened to one of these two people, and it seems like it didn't. So what do we do with that? Your Honor, I would argue that the head stomping did happen to the female victim. On reviewing the video, what happens is Mr. Nubreja, the female victim is approaching Mr. Nubreja from behind. He turns around and immediately punches her full force in the face. She is knocked prone. Then Mr. Nubreja's wife, his accomplice in this instance, then goes and stomps on her face multiple times as she's laying prone on the ground defenseless. And the government's theory is, yes, Mr. Nubreja punched her full force, did not stomp on her, but his accomplice for whom he is legally responsible for because they are acting in concert, she did stomp on the victim's face. But that's not what was presented to the judge. The judge seems to think the stomping was the defendant. I think there was a mistake that the judge mistakenly identified the two men who were grappling that Mr. Nubreja was stomping. The testimony indicates that that was a third victim, a visitor to Alaska. Okay. I guess I'm confused. Now, I have watched the video several times, but I actually don't remember whether I think what you just said is clear or not. I sort of thought it was a third person, but I mean, let's assume for a moment that there's some ambiguity about whether it's the second victim or some third victim. If it was a third victim, would that affect? What would we do with that? The third victim, it wouldn't affect the robbery issue because the robbery is violence against any person during the course of the robbery, and this third victim is the person who tried to intercede and break up the fray. And if he gets stomped out because of that, I think that sustains the robbery conviction or violation. But as to the assault, he wasn't one of the victims contemplated by the assault charges in this case. He was not. So the answer to the question is it's irrelevant to the disproceeding. Yes, Your Honor, except as it pertains to the robbery violation. Okay. Wait. My understanding is that even leaving aside the robbery, he was not the victim who was charged. The so to reflect on the robbery, the language of the robbery statute, it's uses or attempts. Aside from the robbery, I understand that he wasn't robbed. But he also wasn't the victim who was mentioned in the charges in terms of the assaults either.  So therefore, he's irrelevant. No, Your Honor, because the robbery doesn't require the victim be the person who physical violence, the victim of the robbery be the person that physical violence is done upon. It could be any person during the course of that robbery. So you're saying even if there was a mistake and the stomping only happened to a third person, we would still have the robbery offenses, but we might have to kick out the assault offenses? The more serious assault offenses, the first degree at least. Well, the government would still argue that the single punch delivered to the male victim in this case did result in serious physical injury. So the court could sustain on that ground. And with the female victim, she was, in fact, stopped by Mr. Breha's accomplice, as well as punched. Well, but that's the hypo is we're assuming that didn't happen, right? Correct, Your Honor. If that didn't happen, again, we'd be relying on the single punch theory that ---- And that would get you one count, but not two, I guess? I mean, this is sort of where this guideline thing becomes a problem. Like, it's possible that a few of these counts get kicked out, but you'd still have others and then the guideline range is the same? Yeah, and the government agrees that this is somewhat of an odd case because we have all of eight charges, eight violations arising from a single interaction, a single transaction. Two of them are uncontested. And so they carry the same guideline range. They're at the same classification of violation and on remand for resentencing. If the court were to impose a different sentence, I think that should be of concern to the court because that implies that there's some weighing of the seriousness of the offense, the need for punishment, that that robbery, a violation based on robbery is more significant than a violation based on assault of conduct. But I think that runs in the problem that Simtab and McBell present of punishing the severity of the underlying conduct which the court, this court has instructed district courts not to do. Can I ask, say there's confusion. Okay, so your theory is that the female victim was stomped on and punched.  Is there any idea about whether the broken nose came from one or the other? I don't think that there's sufficient information in the record to say the crack happened when the punch was thrown versus the stomp of the face. I think it's, the district court fairly looked at the situation in the totality of Mr. DeReha punched her full force, his accomplice then stomped on her face. I mean, it seems a lot more likely that the broken nose happened from the punch and that the stomp probably didn't happen to her or else she'd be even more injured, right? Like, probably the stomp was a third person. That's how I had watched the video. To be very clear, Your Honor, there were two people being stomped. I would encourage the court to take a look closely at what happens after the female victim is knocked prone by the punch. The woman in the purple onesie, Mr. DeReha's wife, then comes up and you can see her multiple times stomping on the victim's face while she's on the ground. Okay, I'll watch it again. But, I mean, why doesn't she have other kinds of injuries then, right? It's a little weird. I mean, she should have bruises on the side of her head or something. So, are there any, do you have any cases about this circumstance that is, A, at the revocation stage where the guidelines are essentially mandatory rather than advisory, and, B, the mistake is in the characterization of, the guideline, the condition that was violated was not violating a state law, and the question is how many state laws did he violate? It's an odd posture, because ordinarily you don't do harmless error in a guideline situation, a sentencing situation. So do you have anything that would support the notion that we would do it here, nonetheless, given those odds, or at least non-typical circumstances? I haven't found any cases that are even kind of closely present this situation. I'm sorry, what? I haven't found any cases that even closely present this situation that we find ourselves in here. You agree that in general, I mean, if this was an ordinary sentencing after a conviction, if the judge made a mistake, it goes back. We don't do a harmless error, unless the judge, as I understand it, unless the judge says, and I would do the same thing anyway at the time of the sentencing, which didn't happen here. Correct, Your Honor. I do think that if, you know, even if the third degree assaults were a lower class of offense that would have presented a different guideline range, maybe even above the maximum still, but I do think in that situation, it would be appropriate to remand. But here, where the factors are still identical before the court, the court will still have the video, which is what the court made its sentencing decision on. I think the rationale of the court in imposing sentence was the need to protect the public. That's the factor that the court most heavily relied upon. And I don't think that shifts because we still have the violent conduct being the basis for the violation, and the video, which the court hadn't, it was taken in totality of the circumstances when imposing the sentence. And the injuries, whether you call them serious or not. Correct. So the facts don't change. The legal definition of what the conduct qualifies as under Alaska law may change, but the facts, the dangerousness, the sentencing factors don't shift based on those legal distinctions. But also, I mean, it does seem important that if the injuries were whatever the injuries were, because, I mean, criminal law does care about the impact of... I mean, if you punch somebody and nothing happens, that's a different criminal conduct, even though not because of anything you did, than if you punch somebody and, you know, they fall to the ground and die, or almost die, or go into a coma. I mean, it's just... So it's not strictly turning on your conduct. In here, I would argue that the injuries remain the same. The broken nose, under any theory of whether it was a robbery or an assault, the impact to the victims will still be the same, would still be the same on remand, and wouldn't be appropriate to move from. Unless Your Honors have further questions, I'll see the rest of my time. Thank you, counsel. We have time for rebuttal. In a revocation proceeding, the court's ultimate goal is to impose a sentence that reflects the breach of trust. And I think that there is a huge categorical difference between the court finding that somebody committed a third-degree assault versus something that is just one step below murder. And I think it does make a difference, not just in terms of the ultimate sentence. Well, you know, it seems to me that if you focus on the breach of trust, which is correct, your point kind of goes the other way, because he certainly violated the condition that he not violate state law, and he did it in an XYZ way, which is not disputed, as to what he did or what its impact was. What's disputed is what words you put on the impact, essentially. I think we are disputing the conduct and the consequences. I think those are very much in dispute in this case. Well, the legal characterization of them, but you're not really disputing what happened. Well, I think there is a difference between, I guess you're saying that, well, it doesn't matter if we call this assault in the third degree or assault in the first degree, the conduct is the same. I think that the legal distinctions are incredibly important. And ultimately, if it didn't matter, and if it didn't matter, why did the government charge it as assault in the first degree and assault in the second degree? But we know that she broke her nose, and her nose was broken and she needed surgery, and he had a concussion and had some after effects for some period of time. Apparently months, but leaving that out. So is there anything disputed about that much of it? What's disputed is whether that's sufficiently prolonged and sufficiently disfiguring and sufficiently impairing. It's the difference between an injury and serious physical injury. And I think that is a meaningful difference. Between an injury and what? Between an injury and a serious physical injury. I think there is a meaningful difference. Right. Which is the words you put on it. But as to what actually happened, there's not a dispute. Regardless of which one, it's still a crime. Well, and I'd say that there's, when we talk about serious physical injury, we're talking about, you know, somebody who's permanently disabled, permanently disfigured. And that's just not the record that we have in this case. And, you know, an Alaska case law I think is pretty demanding about that standard for what qualifies as serious physical injury. And as far as causation, I want to touch on this very briefly. The government's argument is that Ms. Russell, you know, was kicked repeatedly in the head by Mr. Nabrea's wife. I think the fact, and again, you can review the video as many times as you wish, the, she gets punched, I think, at 1-43-38. It's, you know, I think that's what broke the nose. I think there's really no question about that. From that point forward, I think there's some sort of glancing blows to the back of her head, but I think it's pretty clear that the broken nose was a result of being punched. And again, it's a single strike. And so, and, you know, Ms. Russell never loses consciousness. She's, you know, walking around. I think that's another important distinguishing fact here. So could I ask, I think this may go to your extreme indifference argument. And I was trying to figure out under the Alaska law of first degree assault, it seems like if there was intent to cause serious physical injury, that would also qualify as first degree assault. So I was trying to figure out if the extreme indifference even matters if we disagree with you on serious physical injury. Yeah. Well, I think that the government charged it in the alternative. So I think the robbery one could be shown by if there was an attempt to cause serious physical injury, even if no actual serious physical injury arose. And I think the government's, I think, overreaching in that case. Again, this is... I was more focused on the first degree assault because that's where the extreme indifference to life or whatever the words are, extreme indifference argument comes up with the first degree assault. Oh, yeah. Okay. So, yeah, the extreme indifference, I think the paradigmatic example is like Russian roulette, you know, like you're holding a gun to someone's head and, you know, there's a round in the chamber. And so what I'm asking you is if you're right that there's no extreme indifference, you still lose if there was intent to cause serious physical injury. I don't think there's any evidence here that he... Well, intent, I think, requires more than,  just a single punch to the head, which is, again, the conduct, I think, that resulted in these injuries. But isn't that just back to the same thing about whether this injury was serious? I think the injury, I think the analysis kind of collapses into itself. And both were charged? Yeah, I believe so, yeah. As to the revocation, not just as to the State, not in State court, but as to the revocation? Yes, I believe so. And this was relatively brief conduct. Overall, I think the total time frame that we're dealing with is just a couple of minutes. And I think that does distinguish this from the cases that we cited from Alaska, which have been prolonged. Sorry, can I just ask? I actually thought the warrant said A3, which is the extreme indifference and that it's A2 that would be the serious physical injury. So, I mean, does it matter if it was not the thing charged, if it's still the same crime? Well, I think there's different ways that the government is trying to get about trying to achieve Robbery 1, I'm sorry, Assault 1. And I think the absence of serious physical injury I think is pretty critical, at least in the cases that... But, no, sorry, sorry, it's just if your answer to Judge Berzon was wrong and it was charged one way and not the other instead of both, is there some reason that that matters? I don't believe so. Okay. And with that, I will stand down. Thank you so much. Thank you, both sides, for the helpful arguments. This case is submitted.
judges: BERZON, FRIEDLAND, MENDOZA